IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:26-cv-00086

| | | |
|---|---|---|
| BRENDA GEIGER, CIELO JEAN "CJ" GIBSON, CLAUDIA SAMPEDRO, HILLARY HEPNER, IRINA VORONINA, JANET GUZMAN, JESSICA BURCIAGA, JESSICA "CHARM" KILLINGS, LINA POSADA, PAOLA CAÑAS, ROSA ACOSTA, SANDRA VALENCIA, ANDRA CHERI ROSE a/k/a ANA CHERI, LEANNA BARTLETT, EVA PEPAJ and VIDA GUERRA, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | **COMPLAINT** |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| THE NEW KALIPZO NIGHT CLUB, LLC d/b/a EL CENTENARIO NIGHT CLUB, | ) ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiffs BRENDA GEIGER, CIELO JEAN "CJ" GIBSON, CLAUDIA SAMPEDRO, HILLARY HEPNER, IRINA VORONINA, JANET GUZMAN, JESSICA BURCIAGA, JESSICA "CHARM" KILLINGS, LINA POSADA, PAOLA CAÑAS, ROSA ACOSTA, SANDRA VALENCIA, ANDRA CHERI ROSE a/k/a ANA CHERI, LEANNA BARTLETT, EVA PEPAJ and VIDA GUERRA, (collectively, "Plaintiffs") file this Complaint against THE NEW KALIPZO NIGHT CLUB, LLC, d/b/a EL CENTENARIO NIGHT CLUB ("Defendant") respectfully allege as follows:

## **BACKGROUND**

1.      This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of

1

Plaintiffs, each of whom are well-known professional models, to promote their night club, EL CENTENARIO NIGHT CLUB located at 5920 N Tyron St, STE C, Charlotte, North Carolina 28213 (hereinafter referred to as the "Night Club" or "Centenario").

2.      As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Common Law Right of Privacy - Misappropriation; d) Violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq.; e) Defamation; f) Negligence, Gross Negligence, and Respondeat Superior; g) Conversion; h) Unjust Enrichment; and i) Quantum Meruit.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, Defendant THE NEW KALIPZO NIGHT CLUB, LLC, is a limited liability company formed under the laws of the state of North Carolina, with its principal place of business located at 5920 N Tyron St, STE C, Charlotte, North Carolina, 28213. Upon information and belief, THE NEW KALIPZO NIGHT CLUB, LLC operates EL CENTENARIO NIGHT CLUB, which is located at 5920 N Tyron St, STE C, Charlotte, North Carolina 28213.

8.      Venue is proper in the United States District Court for the Western District of North

Carolina because Defendant's principal place of business is located in Charlotte, North Carolina, Mecklenburg County.

9.      A significant portion of the alleged causes of action arose and accrued in Charlotte, North Carolina and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Charlotte, North Carolina.

## PARTIES

*Plaintiffs*

10.      Plaintiff BRENDA GEIGER ("GEIGER") is a well-known professional model, and a resident of Onondaga County, New York.

11.      Plaintiff CIELO JEAN "CJ" GIBSON ("GIBSON") is a well-known professional model, and a resident of Los Angeles County, California.

12.      Plaintiff CLAUDIA SAMPEDRO ("SAMPEDRO") is a well-known professional model, and a resident of Miami-Dade County, Florida.

13.      Plaintiff HILLARY HEPNER ("HEPNER") is a well-known professional model, and a resident of Charleston County, South Carolina.

14.      Plaintiff IRINA VORONINA ("VORONINA") is a well-known professional model, and a resident of Los Angeles County, California.

15.      Plaintiff JANET GUZMAN ("GUZMAN") is a well-known professional model, and a resident of Los Angeles County, California.

16.      Plaintiff JESSICA BURCIAGA ("BURCIAGA") is a well-known professional model, and a resident of Fulton County, Georgia.

17.      Plaintiff JESSICA "CHARM" KILLINGS ("KILLINGS") is a well-known professional model, and a resident of Los Angeles County, California.

18.      Plaintiff LINA POSADA ("POSADA") is a well-known professional model, and a resident of San Bernardino County, California.

19.      Plaintiff PAOLA CAÑAS ("CAÑAS") is a well-known professional model, and a resident of Miami-Dade County, Florida.

20.     Plaintiff ROSA ACOSTA ("ACOSTA") is a well-known professional model, and a resident of Los Angeles County, California.

21.     Plaintiff SANDRA VALENCIA ("VALENCIA") is a well-known professional model, and a resident of Colombia.

22.     Plaintiff ANDRA CHERI ROSE a/k/a ANA CHERI ("CHERI") is a well-known professional model, and a resident of Orange County, California.

23.     Plaintiff LEANNA BARTLETT ("BARTLETT") is a well-known professional model, and a resident of Orange County, California.

24.     Plaintiff EVA PEPAJ ("PEPAJ") is a well-known professional model, and a resident of Los Angeles County, California.

25.     Plaintiff VIDA GUERRA ("GUERRA") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendant*

26.     Defendant, THE NEW KALIPZO NIGHT CLUB, LLC d/b/a EL CENTENARIO NIGHT CLUB, is a limited liability company formed under the laws of the state of North Carolina and registered to conduct business in North Carolina. During times relevant to this action, THE NEW KALIPZO NIGHT CLUB, LLC operated EL CENTENARIO NIGHT CLUB.

27.     Service of process may be perfected upon Defendant THE NEW KALIPZO NIGHT CLUB, LLC d/b/a EL CENTENARIO NIGHT CLUB by serving the registered agent for service of process, James Kevin Galyan, who can be located at 1306 Sides Ave, Kannapolis, NC 28083.

## FACTUAL ALLEGATIONS

28.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

29.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling

4

contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

30.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

31.     In the case of each Plaintiff, this apparent claim was false.

32.     Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

33.     No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

34.     Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

35.     GEIGER is a professional model and actress who performed with eight-time Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer Keri Hilson. She is most known for her work in Glamour Magazine and her appearance on "The Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous magazines such as Show, Maxim and Raw, and has modeled for several product campaigns such as Primitive Clothing, where she currently has her own line of custom skateboard decks.

36.     That we know of, GEIGER is depicted in the photos in Exhibit "A" to promote Centenario on its Facebook page. These Images were intentionally altered to make it appear that Geiger was either an employee working at Centenario, that she endorsed Centenario, or that she was otherwise associated or affiliated with Centenario.

5

37.     GEIGER has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38.     GIBSON is an American model who enjoys great success in her industry. Gibson was the Import Tuner magazine Model Search winner. Gibson is currently a model for the Falken Drift Team and can be seen at Formula Drift events. Gibson has also appeared in several magazines including FHM, American Curves, Supreme, MuscleMag International, Muscle & Fitness, and Teeze, Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing. Gibson has 71,600 Instagram followers. [1]

39.     That we know of, GIBSON is depicted in the photos in Exhibit "B" to promote Centenario on related social media accounts. These Images were intentionally altered to make it appear that Gibson was either an employee working at Centenario, that she endorsed Centenario, or that she was otherwise associated or affiliated with Centenario.

40.     GIBSON has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

41.     SAMPEDRO is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at age 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

magazines such as Nine 5 Four, Shock, Face to Face and Mixed. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro has three children and is married to former Green Bay's star defensive end Julius Peppers. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined 150,000 fans on Facebook and X (formerly known as Twitter).

42.     That we know of, SAMPEDRO is depicted in the photos in Exhibit "C" to promote Centenario on its Facebook page and other related social media accounts. These Images were intentionally altered to make it appear that Sampedro was either an employee working at Centenario, that she endorsed Centenario, or that she was otherwise associated or affiliated with Centenario.

43.     SAMPEDRO has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

44.     HEPNER is a successful model and actress. She has been highlighted in Playboy Magazine several times, Cîroc Commercials, and performed a role in a music video for the famous country singer, Rascal Flatts.  Hepner has also modeled for well-known companies such as Coquette Lingerie, American Curves, and Rockstar Energy Drink Calendars and Ads, among many other companies.

45.     That we know of, HEPNER is depicted in the photos in Exhibit "D" to promote Centenario on its Facebook page. These Images were intentionally altered to make it appear that Hepner was either an employee working at Centenario, that she endorsed Centenario, or that she was otherwise associated or affiliated with Centenario.

46.     HEPNER has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

7

47.     VORONINA is an international model and actress. After becoming Playboy's Miss January 2001, she represented international brands including SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour to name a few. She has millions of visual impressions around the globe via the covers and pages of worldwide magazines such as FHM, Maxim, Playboy (in 20 countries), Max, Ocean, Shape, 944, Knockout, Q, People, Kandy, Rukus, Vape and Browz magazines. In 2008, Voronina was named St. Pauli Girl spokes model and completed a 12-month PR tour across America. She became the first ever St. Pauli Girl to ring the NYSE closing bell representing Constellation Brands.  In 2013, Voronina was named Kandy Magazine's Model of the Year as a result of her fans downloading the highest number of digital issues that year. Voronina got her first big screen break in "Reno 911! Miami.". Her credits include a series regular role in the fully improvised sitcom "Svetlana" for HD Net, the first ever live action show on Adult Swim Network "Saul of the Mole Men," guest star appearance on Nickelodeon's "iCarly," Comedy Central's "Reno 911!", and feature film parts in "Balls of Fury," & "Piranha 3DD," "Laser Team," and "Killing Hasselhoff." She starred in the indie action flick "Scramble" which she also co-produced. Voronina tours and performs nationally as a stand-up comedian. She loves connecting with her fans and stays active daily across all social media outlets for her followers on Facebook, Instagram, X (formerly known as Twitter) and YouTube. She has more than 5.6 million social media followers.

48.     That we know of, VORONINA is depicted in the photos in Exhibit "E" to promote Centenario on its Facebook page and other related social media accounts. These Images were intentionally altered to make it appear that Voronina was either an employee working at Centenario, that she endorsed Centenario, or that she was otherwise associated or affiliated with Centenario.

49.     VORONINA has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

8

50.     GUZMAN is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle photos, surpassing over 2 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared on the Fashion Nova Billboard located at Melrose and Fairfax (California). She was featured in an exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_TikTok channel become widely popular, with her videos on the platform earning over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel/lifestyle/fashion vlog on YouTube.

51.     That we know of, GUZMAN is depicted in the photos in Exhibit "F" to promote Centenario on its Facebook page and other related social media accounts. These Images were intentionally altered to make it appear that Guzman was either an employee working at Centenario, that she endorsed Centenario, or that she was otherwise associated or affiliated with Centenario.

52.     GUZMAN has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

53.     BURCIAGA is a model and a business owner. She is of Mexican, French, and Irish descent. Burciaga began modeling in 2005 when she submitted a few photos to Stuff Magazine. The magazine responded by flying her out to New York for a photo shoot. After Burciaga's first photo shoot, she won Stuff Magazine's, "Neighborhood Knockout," contest.   The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports Fight Night Round 3 video game. Burciaga's popularity rose quickly and she began appearing in various magazines including Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine, and many others. Burciaga was the Playboy Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series The Girls Next Door. She has various business ventures, including a women's online clothing

boutique, www.SailorandSaint.com. Burciaga's social media reach has surpassed 1.4 million followers on Instagram, over 3.2 million Facebook followers, and over 165,500 followers on X (formerly known as Twitter).

54. That we know of, BURCIAGA is depicted in the photos in Exhibit "G" to promote Centenario on its Facebook page and other related social media accounts. These Images were intentionally altered to make it appear that Burciaga was either an employee working at Centenario, that she endorsed Centenario, or that she was otherwise associated or affiliated with Centenario.

55. BURCIAGA has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

56. KILLINGS is a model and music video star. Got her start in the industry when a friend introduced her to the editor of Show magazine around 2009. She has appeared in a number of popular magazines such as SHOW, Blackmen, Straight Stuntin, Smooth, and Mixed. Killings has also appeared in several music videos as the lead talent including Far East Movement ft. Snoop Dogg's video "OMG," Slim Thug and Baby Bash's video "Swananana," Big Sean and Chris Brown's video "My Last," Bow Wow's video "Pretty Lady," and Jay Sean ft. Nicki Minaj's video "2012." Killings has 1.7 million Instagram followers, 80,000 followers on Facebook and 48,800 X (formerly known as Twitter) followers.

57. That we know of, KILLINGS is depicted in the photos in Exhibit "H" to promote Centenario on related social media accounts. These Images were intentionally altered to make it appear that Killings was either an employee working at Centenario, that she endorsed Centenario, or that she was otherwise associated or affiliated with Centenario.

58. KILLINGS has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and

will continue to suffer, damages as a result of same.

59.    POSADA is a fashion model and designer. A native of Colombia, Posada is best known as a model for the Bésame and Espiral lingerie collections. Posada has also modeled for Paradizia Swimwear, Babalu Swimwear, Irgus Swimwear, Ujeans, as well as many others. She currently has 102 thousand Instagram followers, 4,100 YouTube subscribers, 17,300 Facebook followers, and over 5,200 Twitter followers.

60.    That we know of, POSADA is depicted in the photos in Exhibit "I" to promote Centenario on its Facebook page and other related social media accounts. These Images were intentionally altered to make it appear that Posada was either an employee working at Centenario, that she endorsed Centenario, or that she was otherwise associated or affiliated with Centenario.

61.    POSADA has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

62.    CAÑAS is a Colombian-born model now residing and working in the United States. With over twelve years in the industry, she has found great success as a model, host, runway model, and actress. Cañas has worked runway shows in her native Colombia, as well as in Mexico, Ecuador, the United States, and most recently Paris, France. She is best known for appearing on the cover of Playboy Mexico in May 2018. She has also led international campaigns and was a contracted model for Curve's worldwide lingerie line. In Dubai, United Arab Emirates, Cañas was chosen as the face of the Masters Golf Tournament and was the image for the "International Surf and Sport Expo" in Orlando, FL. She has worked with international brands and labels such as SOHO, KISS Underwear, Salon International, Zona Rosa, and Esteban Escobar. Cañas has appeared on numerous TV shows like FOX Sports and on networks such as Telemundo and TV Azteca. She continues to build an impressive profile and is in high demand in Miami, FL, New York, NY, and Los Angeles, CA. Cañas has over 1 million Instagram followers

63.    That we know of, CAÑAS is depicted in the photo in Exhibit "J" to promote

11

Centenario on its Facebook page. This Image was intentionally altered to make it appear that Cañas was either an employee working at Centenario, that she endorsed Centenario, or that she was otherwise associated or affiliated with Centenario.

64.     CAÑAS has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

65.     ACOSTA started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a bachelor's in art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she was nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 52,000 Facebook followers, over 1.6 million Instagram followers, and over 280,600 Twitter followers.

66.     That we know of, ACOSTA is depicted in the photos in Exhibit "K" to promote Centenario on its Facebook page and other related social media account. These Images were intentionally altered to make it appear that Acosta was either an employee working at Centenario, that she endorsed Centenario, or that she was otherwise associated or affiliated with Centenario.

67.     ACOSTA has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and

12

will continue to suffer, damages as a result of same.

68. VALENCIA is, and at all times relevant to this action was, a successful professional model with numerous accomplishments. She is regarded as one of the top models in her home country of Colombia. Valencia has modeled in Ecuador, Peru, The Dominican Republic, Mexico and Venezuela. She has worked with clients such as Diesel, Americanino, Leonisa, Chevignon, and Onde de Mar, and is the contract face of Bésame Lingerie. She currently has 151 thousand Instagram followers and over 72.3 thousand X (formerly known as Twitter) followers.

69. That we know of, VALENCIA is depicted in the photos in Exhibit "L" to promote Centenario on related social media accounts. These Images were intentionally altered to make it appear that Valencia was either an employee working at Centenario, that she endorsed Centenario, or that she was otherwise associated or affiliated with Centenario.

70. VALENCIA has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

71. CHERI is a published model with companies such as Monster Energy, K&N Filters, Moskova Underwear and Ultimate Armwrestling League. She became a brand ambassador for Shredz. She was featured as a Maxim Instagram Girl of the Week, and was also Playboy's October 2015 Playmate of the Month. She has made appearances in numerous TV series, including Booty Boot Camp, Nuclear Family, Playmate Playback and many more. She is also the owner of Change Fate Active formerly known as Cheri Fit activewear, which sells fit apparel. Cheri currently has over 12.5 million followers on Instagram, over 31,300 followers on Twitter, and over 105,000 followers on Facebook.

72. That we know of, CHERI is depicted in the photo in Exhibit "M" to promote Centenario on related social media accounts. This Image was intentionally altered to make it appear that CHERI was either an employee working at Centenario, that she endorsed Centenario, or that she was otherwise associated or affiliated with Centenario.

13

73.    CHERI has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

74.    BARTLETT is a Ukrainian born Model and Actress living in Southern California, She is most famous for her print work for Guess Clothing, but is also known for her work on Fashion Nova, Dolls Kill and Ban Energy.  She has a very large social media following with over 3 Million Instagram followers.

75.    That we know of, BARTLETT is depicted in the photos in Exhibit "N" to promote Centenario on its Facebook page and other related social media accounts. These Images were intentionally altered to make it appear that BARTLETT was either an employee working at Centenario, that she endorsed Centenario, or that she was otherwise associated or affiliated with Centenario.

76.    BARTLETT has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

77.    PEPAJ is a professional model and actress who moved to Hollywood to pursue her career in 2004. Her work includes high fashion runway modeling, print features, and film roles. Pepaj has appeared in films such as The Hand Off, Interior, True Detective, Leather Bar and The Romp, and was a feature model in a national Diet Coke TV commercial campaign. She is also a content creator, and has over 1.3 million Instagram followers, and her YouTube channel, shared with her husband, has over 2.28 million subscribers.

78.    That we know of, PEPAJ is depicted in the photos in Exhibit "O" to promote Centenario on related social media accounts. These Images were intentionally altered to make it appear that Pepaj was either an employee working at Centenario, that she endorsed Centenario, or that she was otherwise associated or affiliated with Centenario.

14

79.     PEPAJ has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

80.     GUERRA is a Cuban model currently living in the United States. Her first national exposure came when she appeared in a lingerie spread for FHM in December of 2002 and became "FHM's "Model of the Year" in 2004. Since then, Guerra has been featured in many magazines, including DUB, Smooth, Escape, and Open Your Eyes. Guerra has made multiple appearances on several Spanish language television programs such as El Gordo y la Flaca (The Fat Guy and The Skinny Girl). She has also become a staple in music videos, appearing in "Shake Ya Tailfeather" performed by Nelly, P. Diddy, and Murphy Lee, from the Bad Boys II soundtrack, 2003, "The New Workout Plan" performed by Kanye West, 2004, and in "Obsession (No Es Amor)" performed by Frankie J ft. Baby Bash, 2005, among others. In addition, Guerra has appeared in a commercial for Burger King's Tender Crisp Bacon Cheddar Ranch, a number of sketches on The Chappelle's Show, and the film, "National Lampoon's Dorm Daze 2." She lent her voice to the video game, "Scarface: The World Is Yours." In 2005, Guerra was voted Number 26 in FHM's "Top 100 Sexiest Females" and has been named the winner of the magazine's "Best Butt Award". She also produced her own swimsuit calendars and accompanying "behind the scenes" DVDs and a 2006 DVD titled, "Vida Guerra: Exposed." She continues to be extremely in demand as a spokeswoman for fitness and fitness equipment, television shows, and movies. Guerra enjoys over 875,000 followers across Instagram and Twitter.

81.     That we know of, GUERRA is depicted in the photo in Exhibit "P" to promote Centenario on its Facebook page. This Image was intentionally altered to make it appear that Guerra was either an employee working at Centenario, that she endorsed Centenario, or that she was otherwise associated or affiliated with Centenario.

82.     GUERRA has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has

received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

83. Defendant operates (or operated, during the relevant time period,) a Night Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

84. Defendant owns, operates, and controls Centenario's social media accounts, including its Facebook, Twitter, and Instagram accounts.

85. Defendant used Centenario's Facebook, Twitter, and Instagram accounts to promote Centenario's , and to attract patrons.

86. Defendant did this for its own commercial and financial benefit.

87. Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Centenario, endorsed Centenario, or was otherwise associated or affiliated with Centenario.

88. Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Centenario to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

89. Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by Centenario, and at no point have any of the Plaintiffs ever endorsed Centenario or otherwise been affiliated or associated with Centenario.

90. All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs

91. Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

16

92. Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

93. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

94. The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

95. Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

96. Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Centenario.

97. Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

98. In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Centenario.

99. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

100. No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

101. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Centenario's website, Twitter, Facebook, or Instagram accounts.

102. Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

## FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

103. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

104. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein.

105. Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment , or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

106. Thus, this was done in furtherance of Defendant's commercial benefit.

107. Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

108. Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

109. As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

110. Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

111. Despite the fact that Defendant was at all times aware that Plaintiffs neither worked at, nor endorsed its establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant 'sestablishment.

112. Defendant knew that their use of P Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

113. Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

114. As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

115. Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

116. Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

117. WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

118. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

119. Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendant and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

120. Defendant used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market

Defendant's businesses, Defendant's establishment, and/or Defendant's establishment events and activities.

121. Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's businesses, Defendant's establishment, and/or Defendant's events and activities as described in this Complaint was false and misleading.

122. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

123. Defendant's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant's establishment, as to the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant establishment events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities.

124. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, or Defendant establishment events and activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant's

establishment, visit Defendant's establishment, and participate in events at Defendant's establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendant's establishment, visit Defendant's establishment and take part in the events at Defendant's establishment.

125. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's establishment and their activities and attracting clientele to Defendant's establishment.

126. Defendant knew or should have known that their unauthorized use of Plaintiff's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

127. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

128. Defendant's wrongful conduct as described herein was willful.

129. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

130. Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

131. The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant was aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their image to advertise Defendant's businesses.

132. Defendant has caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

133. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Common Law Right of Privacy - Misappropriation)

134.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

135.    Defendant has appropriated  Plaintiffs' likeness for Defendant's commercial purposes without authority or consent from Plaintiffs.

136.    Defendant misappropriated Plaintiffs' likenesses by publishing their Images on Defendant's website or related social media accounts as part of Defendant's advertising campaign.

137.    Defendant's website and social media accounts were designed to advertise and attract business to Defendant and generate revenue for Defendant.

138.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

139.    Plaintiffs areis further informed and believe and hereon alleges that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

140.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

141.    Upon information and belief, Defendant use of Plaintiffs' image and likeness did in fact attract clientele and generate business for Defendant.

142.    At no point did  Defendant ever seek or receive permission or consent to use any Plaintiffs' Image for any purpose.

143. Defendant was at all relevant times aware that it had never received any Plaintiffs' permission or consent to use their Images in any medium for any purpose.

144. At no point did Defendant ever compensate Plaintiffs for its unauthorized use of their Images.

145. Defendant's misappropriation of Plaintiffs' image and likeness in some cases was in violation of copyrights and licenses lawfully held by others, and Plaintiffs' lack of respect for those rights was likewise a proximate cause of the harm done to Plaintiffs from Defendant's misappropriation of their Images.

146. Plaintiffs have been damaged in amounts to be proved at trial.

## FOURTH CAUSE OF ACTION
### (Violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq.)

147. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

148. Defendant operated Defendant's website and social media accounts in order to promote Defendant, to attract clientele thereto, and to thereby generate revenue for Defendant.

149. As such, Defendant's operation of the website and social media accounts, and its publication of Images thereon, were in commerce, in that they involved a business activity and the day-to-day activities and affairs of Defendant in North Carolina.

150. Defendant published Plaintiffs' image and likeness on Defendant's website and social media accounts to create the false impression that Plaintiffs were either club employees working at Defendant, endorsed Defendant, or were otherwise affiliated, associated, or connected with Defendant.

151. As such, Defendant's intent in publishing Plaintiffs' image and likeness was to mislead the public as to Plaintiffs' employment at and/or affiliation with Defendant.

152.     Defendant's false advertising, misrepresentations, and breaches of its duties to Plaintiffs and the public were unfair, in that they were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers in North Carolina.

153.     Defendant's false advertising, misrepresentations, and breaches of its duties to Plaintiffs and the public were deceptive, in that they possessed the tendency or capacity to mislead, or created the likelihood of deception, affecting members of the public in North Carolina and thereby causing injury to Plaintiffs.

154.     Upon information and belief, members of the public relied upon and were in fact deceived by Defendant's false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public.

155.     Defendant thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of North Carolina, and caused injury to the Plaintiffs as complained of herein.

156.     Defendant's advertising practices offend the public policy of North Carolina insofar as they constitute misappropriation of Plaintiffs' property rights in their own Images, breaches of copyrights and/or licenses held by others, and invasion of Plaintiffs' privacy, for Defendant's commercial benefit.

157.     Defendant's advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or employees.

158.     Defendant's advertising practices cause substantial injury to consumers and the Plaintiffs by creating the false impression that Plaintiffs are the new kalipzo night club, llc employees at, endorse, or are otherwise affiliated with Defendant.

159.     There are no benefits to Defendant's advertising practices as set forth hereon except a benefit to Defendant's own commercial interests.

25

160.    As a result of Defendant's unauthorized and misleading publication of Plaintiffs' image and likeness on its website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market themselves as models was injured.

161.    As a result of Defendant's unauthorized and misleading use of Plaintiffs' image and likeness, Plaintiffs have suffered damages in an amount to be determined at trial.

162.    Plaintiffs are entitled to treble damages pursuant to N.C.G.S. Section 75-1.

163.    Plaintiffs are further entitled to an award of attorney's fees against and taxed to Defendants pursuant to N.C.G.S. Section 75-16.1

## FIFTH CAUSE OF ACTION
### (Defamation)

164.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

165.    As detailed throughout this Complaint, Defendant has published altered Images of Plaintiffs in order to promote Defendant to the general public and potential clientele.

166.    Defendant's publication of said Images constitutes a representation that Plaintiffs were either employed by Defendant, that they endorsed Defendant, or that they had some affiliation with Defendant.

167.    None of these representations were true and violated Plaintiffs' rights to their images as well as copyrights and licenses lawfully held by others.

168.    In publishing Plaintiffs' altered Images, it was Defendant's intention to create a false impression to the general public that Plaintiffs were strippers working at Defendant or endorsed Defendant.

169.    Defendant was at least negligent in publishing Plaintiffs' image and likeness because it knew, or should have known, that Plaintiffs were not employed by Defendant, had no affiliation with Defendant, had not consented to the use of their Images, and had not been compensated for the use of their Images.

170.     In the alternative, Defendant published the Images of Plaintiffs with actual malice, and its acts were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs, because it knew that Plaintiffs were not employed by Defendant, had no affiliation with Defendant, had not consented to the use of their Images, and had not been compensated for the use of their Images.

171.     Despite Defendant's knowledge and reckless disregard of the true facts, it nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenue for itself.

172.     Defendant's publication of Plaintiffs' image and likeness constitutes defamation per se under North Carolina law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., working for or endorsing Defendant's business which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

173.     Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation per se under North Carolina law because said publication would tend to impeach and injure each Plaintiffs in their trade, business, and profession as a professional model.

174.     This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as the new kalipzo night club, llc, an inference which Defendant's publication of the Images support.

175.     Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation per se under North Carolina law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

176.     Defendants' publication of Plaintiffs' Images caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Negligence, Gross Negligence, and *Respondeat Superior*)

177.   Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

178.   Plaintiffs are further informed and believe and hereon allege that Defendant maintains or should have maintained employee policies and procedures which govern the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, copyrights, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

179.   Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

180.   Defendant owed a duty of care to Plaintiffs to ensure that its advertising and promotional materials and practices did not infringe on their property and publicity rights.

181.   Defendant further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

182.   Defendant breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

183.   Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and North Carolina law, were not violated. Defendant breached their

28

duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

184.    Defendant's breaches were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs.

185.    Defendant's breaches were the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

186.    As a result of Defendant's negligence and gross negligence, Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages from the Defendant in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Conversion)

187.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

188.    Each Plaintiff is, and at all relevant times was, the exclusive owner of all right, title and interest in their Images, and have property interests thereon.

189.    By the conduct detailed above, Defendant converted Plaintiffs' property rights in their Images for its own use and financial gain.

190.    As a result of Defendant's unlawful conversion of Plaintiffs' image and likeness, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

191.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

192.    As set forth in detail above, Defendant published Plaintiffs' image and likeness in order to promote Defendant to the general public and potential clientele.

193. Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were either club employees working at Defendant or endorsed Defendant.

194. Defendant's purpose in publishing Plaintiffs' image and likeness was to benefit commercially due to its purported association with, employment of, and/or endorsement by Plaintiffs.

195. Upon information and belief, Defendant did in fact benefit commercially due to its unauthorized use of Plaintiffs' image and likeness.

196. Defendant has been enriched by its unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to Defendant.

197. Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

198. As such, Plaintiffs have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Quantum Meruit)

199. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

200. Plaintiffs are each internationally known models who earns their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

201. Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

202. Although Defendant has availed itself of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at Defendant,

endorse Defendant, or are otherwise affiliated with Defendant, Defendant has not compensated Plaintiffs.

203.    Plaintiffs are therefore entitled to reasonable compensation for Defendant's unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a)  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b)  For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Centenario's Night Club;

(c)  For punitive in an amount to be determined at trial;

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e)  For such other and further relief as the Court may deem just and proper.


This the 2nd day of February, 2026.

/s/ John V. Golaszewski_____          /s/ Matthew R. Gambale_____
JOHN V. GOLASZEWSKI                 MATTHEW R. GAMBALE
NY Bar No. 4121091                      N.C. Bar No. 43359
THE CASAS LAW FIRM, P.C.          COUNSEL CAROLINA
1325 Avenue of the Americas, 28th Floor   1100 Wake Forest Road, Suite 205
New York, NY 10019                     Raleigh, North Carolina 27604
Tel: 855-267-4457                         matt@counselcarolina.com
Fax: 855-220-9626                        T: 919.373.6422
john@talentrights.law                    F: 919.578.3733
*Attorneys for Plaintiff*                    *Attorneys for Plaintiff*
*Pro Hac Vice Pending*